UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMA MARTINEZ CRUZ,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>TODD LYONS et al.,<br><br>　　　　　Respondents. | Case No. 5:25-cv-02879-MCS-MBK<br><br>**ORDER RE: EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER (ECF NO. 2)** |

　　　　Petitioner Alma Martinez Cruz brings this action for a writ of habeas corpus. (Pet., ECF No. 1.) Petitioner filed an ex parte application for a temporary restraining order and for issuance of an order to show cause why a preliminary injunction should not issue. (Appl., ECF No. 2-1.) The Court ordered briefing on the application. (Order Setting Br. Schedule, ECF No. 5.) Respondents Todd Lyons, Acting Director of United States Immigrations and Customs Enforcement ("ICE"); Ernesto Santacruz Jr., Acting Director of the Los Angeles Field Office of ICE Enforcement and Removal Operations; and Fereti Semaia, Warden of Adelanto ICE Processing Center, filed a brief opposing the application. (Opp'n, ECF No. 9.) Petitioner filed a reply. (Reply, ECF No. 10.) The Court heard the application on November 5, 2025, and orally issued a temporary restraining order. This Order memorializes the Court's reasoning.

## I. BACKGROUND

According to the petition and application materials, Petitioner is a Mexican citizen who was subject to removal proceedings and granted parole in 2012. (Pet. ¶¶ 11, 15–17; Appl. Exs. B–E, ECF No. 2-2.)[1] "On or about February 13, 2015, an immigration judge administratively closed Petitioner's removal proceedings and pending asylum application based on the Government's exercise of prosecutorial discretion." (Pet. ¶ 19; *see* Appl. Exs. F–H.) Since 2012, Petitioner has lived with her family at the same address, maintained a clear criminal record, complied with conditions of parole, and attended her immigration court appearances. (Pet. ¶ 18.) Ten years after the conclusion of her removal proceedings, Petitioner received a letter from United States Citizenship and Immigration Services requiring her to appear for a credible fear interview on September 17, 2025. (*Id.* ¶ 20; Appl. Ex. A.) When Petitioner reported to the interview, United States Immigration and Customs Enforcement ("ICE") officers arrested Petitioner. (Pet. ¶¶ 21–24.) She was thereafter transported to the Adelanto Detention Center, where she remains in ICE custody. (*Id.* ¶ 25; De Lira Decl. ¶ 7, ECF No. 2-2; Appl. Ex. J.)

Petitioner claims that her detention violates her Fourth Amendment right against unreasonable seizure, her Fifth Amendment right to due process, and the Administrative Procedure Act, 5 U.S.C. § 706(2). (Pet. ¶¶ 26–38.) She argues that she has been irreparably injured given the deprivation of her constitutional rights and the psychological distress the detention imposes on her and her family. (Appl. 8–9; *see* De Lira Decl. ¶ 1.) Petitioner seeks an order enjoining Respondents from relocating her outside of the district, requiring Respondents to release her, and prohibiting them from

---

[1] Petitioner and counsel have been unable to authenticate the exhibits to the application given the exigent circumstances of her detention, (Park Decl. ¶¶ 7–8, ECF No. 7; Reisz Decl. ¶¶ 4–7, ECF No. 7), but Respondents have not disputed their authenticity, so the Court assumes for the purpose of this Order that they are true and correct copies of what the index identifies them to be.

detaining her again without providing her a pre-detention hearing before a neutral immigration judge. (Appl. 3; Proposed Order, ECF No. 2-3.) The Court issued an order prohibiting Respondents from relocating Petitioner outside the district while the instant application is pending. (Order Setting Br. Schedule 3.)

## II.  LEGAL STANDARD

The standards governing temporary restraining orders and preliminary injunctions are essentially the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit also employs a "version of the sliding scale approach" where "a stronger showing of one element may offset a weaker showing of another." *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, an injunction may issue if the plaintiff shows that serious questions go to the merits, the balance of hardships tips sharply toward the plaintiff, the plaintiff is likely to suffer irreparable injury, and an injunction is in the public interest. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

## III.  DISCUSSION

The Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) ("The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention."). Respondents argue that 8 U.S.C. § 1252(g) strips the Court of power to review the petition. (Opp'n 4–6.) For the reasons persuasively and repeatedly articulated in decisions of courts in this circuit, 8 U.S.C. § 1252(g) does not divest the

Court of jurisdiction to consider claims for relief, like the ones here, grounded on bases "distinct from how the government's prosecutorial discretion was deployed" in commencing proceedings, adjudicating cases, or executing removal orders. *Doe v. Noem*, 781 F. Supp. 3d 1055, 1069 (E.D. Cal. 2025) (collecting cases); *see also Ibarra-Perez v. United States*, __ F.4th __, No. 24-631, 2025 U.S. App. LEXIS 22089, at *16–17 (9th Cir. Aug. 27, 2025) ("The provision applies only to three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders. Instead of sweeping in any claim that can technically be said to arise from the three listed actions, the provision refers to just those three specific actions themselves." (cleaned up)); *C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 U.S. Dist. LEXIS 216277, at *20 (E.D. Cal. Nov. 1, 2025) (asserting jurisdiction notwithstanding § 1252(g) where "there is no removal order at issue here and the central issue is Petitioner's continued detention" after termination of release).

### A.  Likelihood of Success on the Merits

Petitioner is likely to succeed on the merits of her Fifth Amendment claim. (Pet. ¶¶ 29–34; Appl. 4–7.)[2]

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

---

[2] The Court does not opine on the likelihood of success on the merits of the Fourth Amendment and Administrative Procedure Act claims.

1     "Freedom from imprisonment—from government custody, detention, or other
2 forms of physical restraint—lies at the heart of the liberty [the Due Process Clause]
3 protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty
4 or over whose liberty the government wields significant discretion retain a protected
5 interest in their liberty." *Garro Pinchi v. Noem*, __ F. Supp. 3d __, No. 5:25-cv-05632-
6 PCP, 2025 U.S. Dist. LEXIS 142213, at *7 (N.D. Cal. July 24, 2025) (collecting cases).

7     In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release
8 a criminal defendant from custody on parole creates "at least an implicit promise that
9 parole will be revoked only if he fails to live up to the parole conditions," generating a
10 liberty interest that "is valuable and must be seen as within the protection of" due
11 process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize
12 that this principle extends to individuals subject to removal proceedings; "[j]ust as
13 people on preparole, parole, and probation status have a liberty interest, so too does [a
14 noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v.
15 Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 2025 U.S.
16 Dist. LEXIS 142213, at *8 (collecting cases for the proposition that "even when ICE
17 has the initial discretion to detain or release a noncitizen pending removal proceedings,
18 after that individual is released from custody she has a protected liberty interest in
19 remaining out of custody").

20     Generally, the Due Process Clause "requires some kind of a hearing *before* the
21 State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127
22 (1990). To determine what procedures are constitutionally sufficient to protect a liberty
23 interest, courts apply the three-part test established in *Mathews v. Eldridge*:

24         First, the private interest that will be affected by the official
25         action; second, the risk of an erroneous deprivation of such
26         interest through the procedures used, and the probable value,
27         if any, of additional or substitute procedural safeguards; and
28         finally, the Government's interest, including the function

5

|   |   |
|---|---|
| 1 | involved and the fiscal and administrative burdens that the |
| 2 | additional or substitute procedural requirement would entail. |

424 U.S. 319, 335 (1976); *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying *Mathews* to due process challenge to immigration detention, noting that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); *López v. Wofford*, No. 1:25-cv-01226-KES-SKO (HC), 2025 U.S. Dist. LEXIS 205596, at *17 (E.D. Cal. Oct. 17, 2025) (collecting cases extending *Mathews* "to the context of immigration detention").

Here, Petitioner was subject to removal proceedings and granted parole in 2012. (Pet. ¶¶ 16–17.) An immigration judge administratively closed Petitioner's removal proceedings in 2015. (*Id.* ¶ 19.) She has lived out of custody, developing family and community ties, in the 13 years between her parole and detention. (*See id.* ¶ 18; De Lira Decl. ¶ 1.) Due process protects Petitioner's liberty interest in remaining out of detention, as she has lived for many years.

Under *Mathews*, Petitioner should have been afforded a pre-detention hearing. Petitioner has a substantial private interest in remaining in her home, providing for her family, and participating in the community, all out of custody. *Cf., e.g., C.A.R.V.*, 2025 U.S. Dist. LEXIS 216277, at *26–27 ("As to private interest, during his approximately four years on parole, C.A.R.V. obtained permission to work, pursued gainful employment, and built a relationship with his fiancé and many others in his community. . . . Petitioner has a substantial private interest in being out of custody and his detention denies him that liberty interest."); *Garro Pinchi*, 2025 U.S. Dist. LEXIS 142213, at *12 ("Ms. Garro Pinchi justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships. The more than two years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention."); *López*, 2025 U.S. Dist. LEXIS 205596, at *15 ("Petitioner had been

6

1  out of custody for nearly four years, and during that time, began a life in the United
2  States, living with her partner and complying with the terms of her release. Her
3  detention denies her that freedom.").

4  There is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing.[3] Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community. *Zadvydas*, 533 U.S. at 690–91. The risk of a wrongful deprivation is especially high here given evidence that Petitioner has no criminal record, has complied with the terms of her parole, and has maintained required contacts with the federal government, including the one that precipitated her detention. (Pet. ¶¶ 18, 20–21; De Lira Decl. ¶¶ 2–4.) This undisputed record raises an inference that the government will have difficulty proving or be unable to prove to a neutral adjudicator by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or her flight. *Cf., e.g.*, *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO (HC), 2025 U.S. Dist. LEXIS 132500, at *18 (E.D. Cal. July 11, 2025) ("Petitioner has no criminal history and indicates that he has attended every check-in and court hearing since he arrived in the United States. Nonetheless, ICE agents arrested petitioner without a warrant as he exited a courtroom following his regularly scheduled immigration hearing. Petitioner has not since been provided any procedural safeguards to determine whether his detention is justified. Thus, the probable

---

[3] To the extent Respondents contend Petitioner's detention is mandatory under 8 U.S.C. § 1225, (Opp'n 11–15), the Court rejects their argument for the reasons exhaustively stated in *Pablo Sequen v. Albarran*, __ F. Supp. 3d __, No. 25-cv-06487-PCP, 2025 WL 2935630 (N.D. Cal. Oct. 15, 2025), and *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 U.S. Dist. LEXIS 179594 (N.D. Cal. Sept. 12, 2025). *Cf. C.A.R.V.*, 2025 U.S. Dist. LEXIS 216277, at *23 ("The government's recent interpretation of the relationship between § 1225 and § 1226 is unfounded and detention is therefore not 'mandatory' in this case, where petitioner has been present in the United States for approximately four years and was released on his own recognizance well before Respondents adopted the new interpretation of the governing statutes.").

value of additional procedural safeguards, i.e., a bond hearing, is high." (citations and internal quotation marks omitted)); *Pablo Sequen v. Albarran*, __ F. Supp. 3d __, No. 25-cv-06487-PCP, 2025 WL 2935630, at *11 (N.D. Cal. Oct. 15, 2025) (finding risk of erroneous deprivation high where "[n]either petitioner has a criminal record, and both have attended all their scheduled immigration hearings, have strong family ties in San Francisco, and are involved in their church and community, making it unlikely that they will pose a threat or flee").

Finally, as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing. *See, e.g.*, *López*, 2025 U.S. Dist. LEXIS 205596, at *16 ("In immigration court, custody hearings are routine and impose a minimal cost. If the government wishes to re-arrest petitioner at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." (cleaned up)); *Garro Pinchi*, 2025 U.S. Dist. LEXIS 142213, at *16–17 ("[D]ue process requires the government to identify some interest beyond its own administrative practices to justify depriving an individual of her liberty without any pre-deprivation protections. Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest."); *Rodriguez Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 U.S. Dist. LEXIS 113566, at *7–8 (N.D. Cal. June 14, 2025) ("[T]he government's interest in re-detaining Petitioner-Plaintiff without a hearing is low, particularly in light of the fact that Petitioner-Plaintiff has long complied with his reporting requirements." (internal quotation marks omitted)).

Respondents do not meaningfully engage with Petitioner's Fifth Amendment claim, let alone provide any cogent explanation for Petitioner's sudden detention after 13 years of parole. Respondents assert that relief is unavailable because the Fifth Amendment claim challenges the constitutionality of Petitioner's arrest, (Opp'n 6–8), which mischaracterizes the substantive claim, (*see* Pet. ¶ 33 ("Respondents' act of re-

detaining Petitioner without notice and without a hearing violates her right to due process.")). Respondents assert that the Immigration and Nationality Act does not require a hearing, and the government has wide discretion to detain noncitizens. (Opp'n 8–10.) The Constitution's guarantee of due process may require a hearing even where a congressional statute may not. *Garcia Barrera v. Andrews*, No. 1:25-cv-01006 JLT SAB, 2025 U.S. Dist. LEXIS 162825, at *19 (E.D. Cal. Aug. 21, 2025) (citing *Young v. Harper*, 520 U.S. 143 (1997), and *Morrissey*, 408 U.S. 471); *see also Marbury v. Madison*, 5 U.S. 137, 180 (1803) ("[A] law repugnant to the constitution is void . . . ."). And even had Respondents cited applicable authority to support their arguments, (*see* Reply 3–4 (noting Respondents' authorities pertain to noncitizens who are subject to final removal orders, unlike Petitioner)), they present no evidence or proffer suggesting they detained Petitioner for any lawful reason.

Indeed, the facts of this case are deeply troubling. Over a decade after Petitioner's removal proceedings concluded, the government demanded that she appear for a credible fear interview. (Pet. ¶¶ 19–20.) The government warned Petitioner that failure to appear would result in a notification to ICE that could result in detention. (Appl. Ex. A.) Petitioner dutifully appeared, but no interview occurred because ICE detained her. (Pet. ¶¶ 21–24.) Accepting the truth of the allegations, the government lured Petitioner with official process regarding her asylum claim, under threat of a deprivation of her liberty, to a location where it proceeded to deprive her of not only her opportunity to advance her asylum claim, but also her liberty. That is outrageous.

### B. Irreparable Harm

Petitioner has established irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018)

(citing *Hernandez*, 872 F.3d at 994). Given the Court's determination that Petitioner is likely to succeed on the merits of her due process claim and, thus, Petitioner's present detention is likely unlawful, Petitioner faces irreparable harm absent injunctive relief.

### C. Balance of Equities and Public Interest

The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "Because public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (cleaned up). The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with a choice 'between [minimally costly procedures] and preventable human suffering,' as discussed above, the Court concludes 'that the balance of hardships tips decidedly in [petitioner's] favor." *Singh*, 2025 U.S. Dist. LEXIS 132500, at *23 (alterations in original) (quoting *Hernandez* , 872 F.3d at 996). These factors favor relief.

### D. Summary

All factors strongly favor injunctive relief. The Court grants a temporary restraining order.

Respondents asked in their brief and at the hearing that injunctive relief be limited to "[r]equiring release unless a Section 1226(a) bond hearing is provided within 7 days." (Opp'n 1.) The constitutional violation persists every minute Petitioner remains detained without appropriate process. Delaying Petitioner's release awaiting a hearing that she should have received before she was detained over a month ago would be unjust. This is an exceptional case that demands a mandatory injunction requiring Petitioner's forthwith release. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH*

& Co., 571 F.3d 873, 879 (9th Cir. 2009) ("In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages."); *e.g.*, *López*, 2025 U.S. Dist. LEXIS 205596, at *18–19 (ordering immediate release); *Singh*, 2025 U.S. Dist. LEXIS 132500, at *25 (same).

The Court exercises its discretion not to require a security. Fed. R. Civ. P. 65(c); *see Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." (internal quotation marks omitted)); *cf. Rodriguez-Flores v. Semaia*, No. CV 25-6900 JGB (JCx), 2025 U.S. Dist. LEXIS 192394, at *14 (C.D. Cal. Aug. 14, 2025) ("Due to the minimal harms suffered by the government, the Court will not require a security.").

## IV. CONCLUSION

The application is granted. The Court issues a temporary restraining order as follows:

Respondents shall release Petitioner from detention forthwith.

Respondents and all of their officers, agents, servants, employees, attorneys, and persons acting on their behalf, in concert, or in participation with them are enjoined from re-detaining Petitioner without providing her a pre-detention hearing before a neutral immigration judge.

///

1     The parties are ordered to show cause why a preliminary injunction should not
2 issue. The Court sets a hearing on the order to show cause for November 24, 2025, at
3 9:00 a.m. The parties may submit to a briefing schedule of their election so long as all
4 briefing is completed by November 21, 2025, at 12:00 p.m.

6   **IT IS SO ORDERED.**

8   Dated: November 6, 2025

                                              MARK C. SCARSI
                                              UNITED STATES DISTRICT JUDGE

10   cc: USMO, BOP